(10 P.3d 771)

No. 83,595

VIRGINIA L. MORRIS, *Appellant*, v. KELLY E. MORRIS, *Appellee*.

Opinion filed September 1, 2000.

*Phillip L. Turner* and *Dan E. Turner*, of Topeka, for the appellant.

*Thomas A. Krueger*, of Krueger Law Offices, of Emporia, for the appellee.

Before PIERRON, P.J., LEWIS, J., and PAUL E. MILLER, District Judge, assigned.

PIERRON, J.: In this automobile accident case, Virginia L. Morris appeals the summary dismissal of her claims. The trial court granted summary judgment to Kelly E. Morris (not a relative of Virginia). The court held the statute of limitations had expired as Kelly was not served with process within the statutory time period.

Virginia was injured in an automobile accident in Emporia on July 8, 1996. A lawsuit was filed on July 6, 1998, in Lyon County District Court naming Kelly as defendant.

Service of process was obtained upon Kelly on October 22, 1998, when he picked up the summons at the Finney County Sheriff's office. Kelly filed a motion to dismiss for lack of jurisdiction on the basis that Virginia's claim was barred by the applicable 2-year stat-

ute of limitations, K.S.A. 1999 Supp. 60-513(a)(4), due to untimely service of process under K.S.A. 60-203. Kelly also affirmatively pled the statute of limitations as a defense in his answer.

In January 1999, Kelly filed a motion for summary judgment, similarly alleging lack of jurisdiction based on the running of the statute of limitations. In his motion, Kelly asserted that since service was not obtained upon him within 90 days after the filing of the petition, then, by reason of 60-203, the action was deemed to have commenced on October 22, 1998, the date he was served. The trial court granted Virginia's motion for discovery. In her subsequent response to the summary judgment motion, Virginia alleged that the running of the statute of limitations was tolled by reason of K.S.A. 60-517 due to an error by the Ellis County Sheriff's office and also due to Kelly's evading of service of process.

After a hearing, the trial court sustained Kelly's motion for summary judgment. The court found Virginia had failed to sustain her burden of proving facts sufficient to toll the statute of limitations. The court stated Virginia had not proven that Kelly had concealed himself either prior to or after the filing of the petition. The court also found an application of the doctrine of unique circumstances would not have resulted in timely service of process. The court stated there was no material issue of fact and Virginia had failed to commence her action within the 2-year statute of limitation.

Virginia first argues the statute of limitations should be tolled because Kelly absconded or hid himself so that service of process could not be obtained through the exercise of due diligence.

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must

be denied. [Citations omitted.]" *Bergstrom v. Noah*, 266 Kan. 847, 871-72, 974 P.2d 531 (1999).

"The interpretation and application of statute of limitations is a question of law for which the court's review is unlimited. [Citation omitted.] Likewise, the court's review of conclusions of law is unlimited. [Citation omitted.]" *Brown v. State*, 261 Kan. 6, 8, 927 P.2d 938 (1996).

Kelly was 16 years old when the accident occurred. He attended Northern Heights High School in Lyon County for the 1995-96 and 1996-97 school years. At the time of the accident, Kelly was not living at his mother's home in Admire, Kansas, but was living with Duane Calhoun in Allen, Kansas. He was driving Calhoun's truck at the time of the accident. Kelly lived with Calhoun from the date of the accident until August 24, 1997, when he moved to his father's home in Hays, Kansas.

Kelly lived with his father Don Morris in Hays, Kansas, from August 24, 1997, to June 24, 1998. He attended Victoria High School in Victoria, Kansas, from August 1997 to June 1998 for his junior year of high school. While attending Victoria High School, Kelly also worked at the Burger King in Hays from September 1997 until June 1998.

Kelly left Hays on June 24, 1998, to live with his mother, Nancy Winsky, who had remarried and moved to a home located between Garden City and Holcomb, Kansas. It had a Garden City address and a Holcomb phone number. Kelly worked at the Red Baron Restaurant in Garden City as a cook from June 1998 until December 1998. In September 1998, Kelly enrolled at Holcomb High School and his records were transferred there from Victoria High School.

In his affidavit, Kelly stated that on or about October 20, 1998, Winsky told him that the Finney County Sheriff's office had called his aunt, Keianna Thompson, at the Red Baron Restaurant and told her they had some papers for Kelly. Kelly first went to the Garden City Police Department by mistake and then on October 22, 1998, he went to the Finney County Sheriff's office where he received the lawsuit summons.

K.S.A. 1999 Supp. 60-513(a)(4) provides a 2-year statute of limitations on the cause of action set forth in Virginia's petition.

K.S.A. 60-203 states:

"(a) A civil action is commenced at the time of: (1) Filing a petition with the clerk of the court, if service of process is obtained or the first publication is made for service by publication within 90 days after the petition is filed, except that the court may extend that time an additional 30 days upon a showing of good cause by the plaintiff; or (2) service of process or first publication, if service of process or first publication is not made within the time specified by provision (1)."

The date of the accident was July 8, 1996. The 90 days within which Virginia could obtain service commenced running on July 6, 1998, the date Virginia filed her petition. The time for proper service under 60-203 expired on October 5, 1998. Kelly was served on October 22, 1998, 108 days from the date of the filing of the petition. Kelly's petition was not served within the proper time period unless tolled by 60-517.

K.S.A. 60-517 provides:

"If when a cause of action accrues against a person he or she be out of the state, or has absconded or concealed himself or herself, the period limited for the commencement of the action shall not begin to run until such person comes into the state, or while he or she is so absconded or concealed, and if after the cause of action accrues he or she depart from the state, or abscond or conceal himself or herself, the time of the absence or concealment shall not be computed as any part of the period within which the action must be brought. This section shall not apply to extend the period of limitation as to any defendant whose whereabouts are known and upon whom service of summons can be effected under the provisions of article 3 of this chapter."

This statute was discussed in *Gideon v. Gates*, 5 Kan. App. 2d 23, 611 P.2d 166, *rev. denied* 228 Kan. 806 (1980), where the court held that the word "known" as used in the statute means an address or place where service of process upon the defendant can be effected that is known or should have been known to the plaintiff by the exercise of due diligence. See Gard's Kansas C. Civ. Proc. 3d §60-517 (1997).

The court in *Johnson v. Miller*, 8 Kan. App. 2d 288, 289, 655 P.2d 475 (1982) set forth a two-prong test under 60-517: "(1) Whether the plaintiff, in the exercise of due diligence, knew or

should have known of defendant's whereabouts, and (2) whether defendant concealed himself."

Virginia raises a number of arguments to support her claim that Kelly was hiding and evading service of process. First, Virginia states that Kelly, through all his changes of address from 1995 through 1998, never notified the division of motor vehicles as to his changes of address. Virginia states that Kelly was in clear violation of K.S.A. 8-248. The address on his driver's license was Winsky's old address in Admire, Kansas. Virginia maintains that Kelly's failure to update his address clearly aided in his hiding and his intentional failure should alone justify tolling the statute of limitations under 60-517.

Second, Virginia argues Winsky's failure to disclose Kelly's whereabouts in a phone call on July 17, 1998, at her Garden City home was direct evidence of evading service. Winsky said she would have her attorney call the office of Virginia's lawyer, but she never did. She told Kelly not to call the office of Virginia's lawyer.

Virginia speculates that Winsky intentionally misspelled her last name during the phone call on July 17, 1998, and that Winsky probably contacted her attorney after the phone call and was told the lawsuit would be dismissed if they could not obtain service on Kelly. This, of course, is just speculation.

Virginia argues she exhausted all her avenues in trying to serve Kelly. She states that Kelly was living with Winsky, he had no phone number, Winsky did not have a phone number, he did not register with the post office, he did not register his vehicle in Finney County, he did not change the address on his driver's license, the house he was living in was rented under Thompson's name, Winsky and Thompson refused to disclose Kelly's whereabouts, and Kelly always attended a high school outside the city where he was living.

Virginia also argues the actions of Winsky and Thompson were intentional misdirections as to Kelly's whereabouts. The process server contacted the Red Baron Restaurant in Garden City and was told by "a woman manager" that Kelly no longer worked at the restaurant and had moved back to Hays to go to school. At that time, Kelly was in fact working at the Red Baron and attending Holcomb High School and living in Garden City. Winsky and

Thompson both worked at the Red Baron when this contact was made. They deny being the source of the statement. There certainly is no evidence that Kelly made the statement.

Virginia contends the woman manager made the statement to the process server on or about September 16, 1998, and she contends the statute of limitations should be tolled from that date until service was obtained on October 22, 1998.

The burden of proof was upon Virginia to prove facts sufficient to toll the statute of limitations. *Johnson*, 8 Kan. App. 2d at 290. When a trial court makes a negative factual finding, the party challenging that finding must prove arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice because the negative finding signifies the failure of the party upon whom the burden of proof was cast to sustain it. *Thomason v. Stout*, 267 Kan. 234, 238, 978 P.2d 918 (1999).

The mere inability of a plaintiff to locate a defendant where there has been no attempt by the defendant to conceal himself or herself is not sufficient to establish concealment within the meaning of 60-517. *Johnson*, 8 Kan. App. 2d at 290. We do not find Virginia's claims of concealment to have merit.

A violation of 8-248, requiring a driver to update his or her address, in itself, does not prove concealment and toll the running of the statute of limitations. Here, Kelly failed to update the address on his driver's license well before the earliest possible date Virginia alleges he should have known about the lawsuit, July 17, 1998. Seeing Kelly's failure to update his license information as an attempt to conceal himself is somewhat of a stretch.

We also do not believe the trial court disregarded the evidence of alleged concealment or misdirection by Winsky or Thompson. The trial court correctly held Virginia failed to prove that Kelly concealed himself either prior to the filing or after the filing of the petition.

Additionally, Kelly's actions of going to the sheriff's office to pick up his summons is not the act of someone attempting to evade service of process.

Further, Virginia had time before the expiration of the original 90-day period to obtain an extension. K.S.A. 60-203(a) provides the

court may extend the 90-day period for an additional 30 days upon a showing of good cause by the plaintiff. Had Virginia filed for a 30-day extension, when Kelly picked up the summons on October 22, 1998, the service would have been timely and the cause of action would have been commenced within the proper time period.

Virginia also generally argues that concealment should be defined as any lack of cooperation with obtaining service by the object of service or his or her friends or relatives. Specifically, Virginia contends that following the telephone conversation with Winsky, concealment is established because of Winsky's refusal to disclose Kelly's whereabouts. She opines that after that conversation Kelly probably knew of the lawsuit and was bound to make his whereabouts known or otherwise aid in the execution of service.

While this position could be mandated by the legislature as a condition for the enforcement of the applicable statute of limitations, the legislature has not done so. There are reasons why someone may choose to take affirmative actions to help in the service of process on themselves. We do not believe they are required to do so. Of course, determination of whether a person was concealing himself or herself, or just not making an effort to ease service, will often be a fact-sensitive question. However, the evidence here does not establish concealment. Kelly, a minor, was living with his mother, attending high school, working, prosecuting a workers compensation case, and otherwise openly living in Kansas. It is only by supposition that affirmative concealment can be established. At worst, a limited refusal to cooperate can be shown. Under our present law, we do not believe cooperation is required of the object of service to keep the time running.

Even viewing the evidence in the light most favorable to Virginia, as we are required to do, we do not find the trial court erred in holding that Virginia had not proved sufficient facts to show Kelly had concealed himself and in granting his motion for summary judgment.

Next, Virginia argues the statute of limitations should be tolled under the unique circumstances doctrine.

The unique circumstances doctrine was applied to statutes of limitation in *Slayden v. Sixta*, 250 Kan. 23, 825 P.2d 119 (1992).

In *Slayden*, the statute of limitations ran due to a clerical error on the part of the clerk of the district court in issuing a summons with an incorrect address. The *Slayden* court concluded that our legislature did not intend that an error by a clerk of the district court when addressing a summons should deprive a litigant of the right to an adjudication of the issues on the merits. The court determined that under the unique circumstances of the case, the 40-day delay in serving the summons caused by the clerk of the district court should not be charged to the plaintiff. 250 Kan. at 30-31.

Virginia argues that from the time the Ellis County Sheriff received the summons until it was returned the second time should not be counted towards the 90-day period for service of process under 60-203 because of the Ellis County Sheriff's error in not initially serving the summons. Virginia contends she is entitled to an extra 21 days for tolling the 90-day service period because the summons was issued on September 16, 1998, and was returned unserved on October 5, 1998, with the notation that the individual had moved to Garden City. She maintains that if the 21 days are added on to the 90-day service period, then her petition was timely filed and should not have been dismissed.

We agree with the trial court that the doctrine of unique circumstances would at most toll the statute of limitations from September 17, 1998, through September 25, 1998. This was a period of 8 days, not 21 days as suggested by Virginia. The tolling period did not run until October 5, 1998, but stopped on September 25, 1998, when the Ellis County Sheriff tried unsuccessfully to serve Kelly in Ellis County. Because the summons should have been served by October 5, 1998, in order to comply with the 90-day service period, and the summons was not served until October 22, 1998, 17 days later, an 8-day tolling of the statute would not have saved Virginia's case from dismissal.

Affirmed.