No. 94,698

KELLY A. FINLEY, *Appellant*, v. ESTATE OF CHARLES "DON" DEGRAZIO, CRNA, deceased; SAM SIMON, CRNA; LESLIE M. LUINSTRA, M.D.; and TERRY L. MILLS, M.D., *Appellees*.

(170 P.3d 407)

Opinion filed November 2, 2007.

*Terri L. Fahrenholtz*, of Brennan Law Group, P.A., of Wichita, argued the cause, and *Larry Wall* and *John L. Brennan*, of the same firm, were with her on the briefs for appellant.

*Matthew P. Sorochty*, of Woodard, Hernandez, Roth & Day, LLC, of Wichita, argued the cause, and *Peter G. Collins* and *Nancy Ogle*, of the same firm, were with him on the briefs for appellee Sam Simon.

*Kenneth E. Pierce*, of Pierce Law Office, of Hutchinson, was on the briefs for appellee Estate of Charles "Don" DeGrazio.

*James D. Oliver*, of Foulston Siefkin LLP, of Wichita, argued the cause, and *Amy Lemley*, of the same firm, was with him on the briefs for appellees Terry L. Mills and Leslie M. Luinstra.

The opinion of the court was delivered by

NUSS, J.: After a district court judge granted a 30-day extension to obtain service of process on defendants, plaintiff Kelly A. Finley timely effected service. A subsequent district court judge ruled that

Finley had not shown the requisite good cause for the extension under K.S.A. 60-203(a) and set aside the order. As a result, her action was not timely commenced and was dismissed.

The Court of Appeals applied the unique circumstances doctrine to save Finley's service of process and her lawsuit. *Finley v. Estate of DeGrazio,* 36 Kan. App. 2d 844, 148 P.3d 1284 (2006). This Court granted review pursuant to K.S.A. 20-3018(b).

The issues on appeal, and our accompanying holdings, are as follows:

1. Does the doctrine of unique circumstances apply to the circumstances of this case? No.

2. Could Judge Anderson render void *ab initio* the order of another judge? Moot.

3. Did Judge Anderson abuse his discretion? Moot.

Accordingly, the judgment of the district court is affirmed and the judgment of the Court of Appeals is reversed.

## FACTS

*Underlying Procedural History*

Finley received medical care from the defendants in late October 2000. Alleging the care was negligent, she requested a medical malpractice screening panel in Sedgwick County District Court. The court convened a screening panel, thus tolling the statute of limitations pursuant to K.S.A. 65-4908. Subsequently, the court found the proper venue was Harvey County District Court and the case was transferred there. Because the nominations to the screening panel remained incomplete by January 2004 and Finley had failed to designate her panel member, defendants filed a motion to dismiss. On March 23, 2004, on joint motion of all the parties, the screening panel was dismissed. Pursuant to 65-4908, Finley then had 30 days to file her medical malpractice action.

On April 22, 2004, Finley timely filed her suit against the four defendants. While summons requests were prepared and faxed to the court on May 24, 2004, Finley's counsel advised the clerk that her law office would effect service in lieu of using the county sheriff's office.

Approximately 6 weeks before the suit's filing, DeGrazio's attorney had sent Finley a suggestion of death and, at some point, Finley's counsel realized she needed to open an estate for him to have a special administrator appointed to receive service. Apparently believing the estate proceeding could not be commenced in time to effect service within the required 90-day period and wishing to serve all defendants at the same time, counsel faxed a proposed Order Extending Time for Service to the court on July 7, 2004.

Judge Walker signed the order the next day, granting Finley a 30-day extension to serve defendants. All defendants were properly served within the 30-day extension. The defendants filed separate answers but also joined in a motion to dismiss challenging the order. They essentially asked the court to reconsider its granting of the extension, arguing that Finley failed to show good cause when requesting the extension and that they consequently were not served before the statute of limitations ran. They took particular exception to paragraph 3 of the order, which stated, "Plaintiff has through due diligence attempted service upon this Defendant but her efforts have not been successful."

### District Court's Decision

Judge Anderson conducted a hearing on the motion to dismiss because Judge Walker had recused. Finley's counsel acknowledged the order's language in paragraph 3 regarding due diligence to attempt service, but argued that she did make such efforts. She described her law office's normal practice of arranging for a local process server instead of using law enforcement to serve summons and generally described efforts to locate such servers. She candidly admitted, however, that she had not physically attempted service on the defendants and failed.

Finley's counsel also argued that "[i]f the language contained in the order is inaccurate, that alone does not void what good cause plaintiff did have in needing the additional time in which to serve process." Accordingly, counsel then attempted to establish good cause on grounds that had not been provided to Judge Walker. These included the breakup of her law firm on January 1, 2004,

and her resulting busy schedule, and the necessity of opening the DeGrazio estate in order to perfect service.

Judge Anderson ruled that, under K.S.A. 60-203(a)(1), Finley had the burden of showing she had good cause for obtaining the order, which she failed to meet. He further held that even if Finley presently showed good cause, 60-203(a)(1) provides that an extension can be granted by the court only *"upon* a showing of good cause by the plaintiff."* Because Finley did not show good cause at the time she procured the order, Judge Anderson ruled the order was not valid.

Next, Judge Anderson determined the unique circumstances doctrine did not apply to provide relief from the running of the statute of limitations. He observed that the doctrine is not applicable unless a party reasonably relies on some action taken by the district court. He ruled that Finley's counsel was chargeable with knowledge of the law, and she knew or should have known that an extension could be obtained only upon a showing of good cause. Further, she prepared the order and included a finding that she had attempted to serve the defendants and failed. He found: "I will not go so far as to accuse plaintiff's counsel of purposely misleading Judge Walker, but I feel it borders on a reckless disregard for the true facts of this case."

Accordingly, the judge concluded that Finley's claims were time barred pursuant to the 2-year statute of limitations in K.S.A. 60-513(a)(7), and granted the defendants' motions to dismiss.

Finley filed a motion to reconsider. Among other things, she supplied an affidavit from the firm's legal assistant who had prepared the order from forms in the firm's files. Attached to the motion were copies of three orders previously prepared and submitted by the firm and signed by a judge in other cases, without separate motion, hearing, or oral argument, which her counsel argued demonstrated that the language used and procedure followed in Finley's case was appropriate. Included among the orders was one virtually identical to Finley's—prepared by her counsel, faxed to the district court clerk, and signed by Judge Anderson in January 2004.

The legal assistant's affidavit also described Finley's actions taken to serve the defendants. The affidavit, together with previously-produced information, revealed that before Finley's submission of the order, the actual steps taken to obtain service were limited to her request for the clerk's issuance of the summonses, calls to process servers in Wichita to check on fees, attempts to locate a Newton process server, and eventual instruction to the assistant to hire a Wichita process server. The motion for reconsideration was denied.

## Court of Appeals' Decision

The Court of Appeals acknowledged that this case presented a very difficult question but, nonetheless, agreed with Finley that the unique circumstances doctrine should have been applied to save her service of process and her cause of action. Accordingly, it reversed the district court's dismissal and remanded with directions that her case proceed as if service had been timely effected. *Finley v. Estate of DeGrazio,* 36 Kan. App. 2d 844, 148 P.3d 1284 (2006).

The Court of Appeals based its decision upon the following:

"(1) [T]he apparent practice in McPherson District Court, or at least on one prior occasion, to accommodate 60-203(a) requests of counsel upon little or no showing, thus causing counsel to reasonably believe that her extension order was valid; (2) despite what the district court characterized as 'reckless disregard' for the true facts in establishing good cause, counsel's conduct was found to be less culpable than an outright misrepresentation or fraud on the court; (3) the lack of any real prejudice to defendants by reason of being served in mid-August rather than prior to July 22; (4) the need to liberally construe the good cause requirement of K.S.A. 60-203(a)(1); (5) the prejudice to plaintiff of a dismissal of her action, contrary to policy in Kansas to provide litigants their day in court through an adjudication on the merits. [*Slayden v. Sixta,* 250 Kan. 23, 30, 825 P.2d 119 (1992)]; (6) our belief that the implications of Judge Anderson's decision to render void *ab initio* the order of another judge after a party has relied on that order to extend a deadline critical to survival of that party's cause of action could place in question the validity of virtually every order of a district court, thus jeopardizing the efficiency of the administration of justice in Kansas." 36 Kan. App. 2d at 852.

Additional information will be provided as necessary to the analysis.

## ANALYSIS

Issue 1: *The unique circumstances doctrine does not apply.*

We begin by examining the statute upon which Finley relied to request her 30-day extension. K.S.A. 60-203(a)(1) states in relevant part:

"(a) A civil action is commenced at the time of: (1) Filing a petition with the clerk of the court, if service of process is obtained or the first publication is made for service by publication within 90 days after the petition is filed, *except that the court may extend that time an additional 30 days upon a showing of good cause by the plaintiff.*" (Emphasis added.)

We proceed to determine whether the unique circumstances doctrine applies. The doctrine is one of specific and limited application, and whether it applies is a question of law subject to de novo review. See *In re Tax Appeal of Sumner County,* 261 Kan. 307, 316, 930 P.2d 1385 (1997).

As the United States Supreme Court recently stated in *Bowles v. Russell,* 551 U.S. 205, 213, 168 L. Ed. 2d 96, 127 S. Ct. 2360 (2007), "[T]he unique circumstances doctrine . . . has its roots in *Harris Truck Lines, Inc., v. Cherry Meat Packers, Inc.,* 371 U.S. 215, 9 L. Ed. 2d 261, 83 S. Ct. 283 (1962) *(per curiam).*" The Court of Appeals correctly observed that the Kansas Supreme Court first embraced the doctrine in *Schroeder v. Urban,* 242 Kan. 710, 750 P.2d 405 (1988). 36 Kan. App. 2d at 848. There, it was applied to permit an untimely appeal in which the delayed filing resulted from (1) the appellant's good faith and reasonable belief that the judicial action seemingly extending the time for filing was valid; (2) the perceived extension was for no more than 30 days and was made and entered prior to the expiration of the official appeal period; and (3) the appellant filed the appeal within the extension.

Since *Schroeder,* this court has applied the doctrine to provide relief in several cases. See, *e.g., In re Tax Appeal of Sumner County,* 261 Kan. 307 (untimely filed petition for reconsideration excused where Board of Tax Appeals [BOTA] made erroneous statement regarding filing period); *Slayden v. Sixta,* 250 Kan. 23, 825 P.2d 119 (1992) (where 40-day delay in serving summons was

caused by error of clerk of district court); see also *Nguyen v. IBP, Inc.,* 266 Kan. 580, 587, 972 P.2d 747 (1999) (where filing delay is direct result of an error made in administrative law judge's office, doctrine "could" be found applicable).

We have difficulty applying the doctrine to provide relief under the facts of this case, however. Finley apparently believed that DeGrazio's estate could not be opened and an administrator appointed and served within the 14 days remaining in the 90-day period after filing of the suit. This is incorrect. See, *e.g.,* K.S.A. 59-710 (expedited procedure). Because of her belief, she apparently therefore elected to withhold service on all defendants—even though there was never any concern expressed about an ability to obtain timely service on the three individual defendants.

Accordingly, with 14 days remaining during her 90-day service period, Finley's counsel faxed to the court a proposed order extending time under K.S.A. 60-203(a). No motion, letter, affidavit, request for a hearing, or any other information was provided to the court. As the Court of Appeals correctly noted, "Supreme Court Rule 132 (2005 Kan. Ct. R. Annot. 199) *requires* ex parte applications of this nature to be presented by counsel in person to the court." (Emphasis added.) 36 Kan. App. 2d at 847. It also correctly noted that the Court of Appeals "has held that the better practice, if not the required procedure to request such an extension, is by written *motion* pursuant to Rule 133 (2005 Kan. Ct. R. Annot. 199), with a *ruling made by the court documented* pursuant to Rule 134 (2005 Kan. Ct. R. Annot. 200)." (Emphasis added.) 36 Kan. App. 2d at 847.

The proposed order contained the proposed finding: "3. Plaintiff has through due diligence attempted service upon this Defendant but her efforts have not been successful." In response to the motion to dismiss, Finley's counsel admitted for the first time that this statement was untrue and was included only as "boilerplate." Before submission of the order, no effort had been made to open the estate of DeGrazio and appoint a special administrator, much less to serve one. Similarly, no effort had been made to actually serve any of the other defendants who might be the "Defendant" referenced in the proposed order. Purported service efforts were lim-

ited to obtaining summonses from the clerk of the court and to making inquiries about hiring private process servers.

K.S.A. 60-203(a)(1) provides that an extension of an additional 30 days may be granted *"upon* a showing of good cause." (Emphasis added.) We therefore reject Finley's argument that essentially asserts she can first obtain the order and then, when challenged, at a later date actually establish her grounds for good cause.

We also conclude that providing good cause at the time of the requested extension requires that the represented facts—which purportedly constitute good cause—be grounded in the truth. *Cf.* K.S.A. 60-211 (every pleading and motion shall be signed by a party's attorney who, by such signature, certifies that to the best of that person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions have evidentiary support). Moreover, a mistake of counsel or ignorance of the rules usually does not constitute good cause for failure of timely service. *In re Kirkland,* 86 F.3d 172, 175 (10th Cir. 1996). A fortiori, untruthfulness cannot be said to be good cause.

We conclude that Finley's counsel's untrue representations to the court, which it clearly relied upon in signing the order as presented because it had no other information from Finley, are what prevent application of the doctrine of unique circumstances. We first observe that running throughout the case law regarding the doctrine is the requirement that the party seeking its application has relied upon either the court's or some individual's official conduct. Finley argues she relied upon Judge Walker's order of extension. But no case has been found where the official action relied upon was itself induced by untrue statements from a party seeking application of the doctrine, much less one where the court then applied the doctrine to provide relief.

We next observe that the nature of the unique circumstances doctrine would preclude such relief under our facts because it has been said that the application of the doctrine depends upon such concepts as equity, the interests of justice, good faith, estoppel, or nonparty error.

For example, in *Bowles,* 551 U.S. at 214, the Supreme Court held: "Because this Court has no authority to create *equitable* exceptions to jurisdictional requirements, use of the 'unique circumstances' doctrine is illegitimate." (Emphasis added.) Similarly, in *In re Tax Appeal of Sumner County,* 261 Kan. at 316, 930 P.2d 1385 (1997), after the county perfected its request for a rehearing within the time incorrectly lengthened by BOTA's order, we asked:

"Does this establish unique circumstances sufficient for application of the *equitable* rule allowing review on the merits in the *interests of justice,* notwithstanding a legal defect in perfecting the appeal?" (Emphasis added.)

See also *Schroeder,* 242 Kan. 710, Syl. ("*In the interest of justice,* an appeal which is otherwise untimely may be maintained in unique circumstances . . . ." [Emphasis added.]); *Slayden,* 250 Kan. at 30 (citing *Schroeder*).

This court addressed the doctrine's related concept of good faith in *Slayden,* 250 Kan. 23. There, the doctrine was applied to untimely service of process because of the error of a court clerk.

"In the federal courts, 'unique circumstances,' although limited to appeals, has proven to be an elastic concept. *The doctrine seems to require* [1] *a demonstration of good faith on the part of the party seeking an enlargement of time* to appeal and [2] a reasonable basis for noncompliance within the time specified by the rules. *The same concept should guide this court when applying the doctrine.*" (Emphasis added.) 250 Kan. at 30.

As for the doctrine's related concept of estoppel, this court stated in *Schroeder,* 242 Kan. at 713 (citing 4A, Wright and Miller, *Federal Practice and Procedure:* Civil 2d § 1168 [1987]):

" 'When employed in the context of an untimely appeal, *the unique circumstances concept is based on a theory similar to estoppel.* The Supreme Court [*e.g.,* in *Harris Truck Lines, Inc.*] seems to have concluded that a party ought not be denied an opportunity to appeal because of his failure to file a timely appeal *when that failure resulted from reliance on action taken by the district court that generated a reasonable belief that an appeal could be initiated at a later date.*' "

Accord *In re Tax Appeal of Sumner County,* 261 Kan. at 313.

Akin to the interrelated concepts of equity, justice, good faith, and estoppel is this court's decision to limit application of the doctrine to situations involving nonparty error. In *Nguyen v. IBP, Inc.,* 266 Kan. 580, 587, 972 P.2d 747 (1999) (citing *Sumner County,*

*Slayden,* and *Schroeder),* we stated: "This court also cautioned that the unique circumstances doctrine is one of 'specific and limited application.' *In re Tax Appeal of Sumner County,* 261 Kan. 307, 316, 930 P.2d 1385 (1997). In fact, this court has applied the unique circumstances doctrine only where an untimely filing was the result of a nonparty error."

Indeed, in *Nguyen,* where an appeal's filing delay was the direct result of an error made in the administrative law judge's office, this court held: "This is precisely the kind of situation where the unique circumstances doctrine has been applied in Kansas to toll the time for filing for review of a case, and we could find it applicable in this case." 266 Kan. at 587.

As recently as 2004, the Court of Appeals has acknowledged in an unpublished opinion that "Kansas courts have applied the unique circumstances doctrine *only* where an untimely filing was the result of a nonparty error." (Emphasis added.) *Douglas v. Watson,* case No. 91,197, filed July 2, 2004.

Of these concepts contained in the doctrine, the Court of Appeals appeared to directly address only the concept of good faith. Finley's counsel had argued that "[t]he order was requested and granted in good faith." The Court of Appeals held that counsel's experience with such orders—presumably as revealed by the attachments to the legal assistant's affidavit—supported her claim of good faith. *Finley,* 36 Kan. App. 2d at 851. We simply cannot agree. The record on appeal does not demonstrate that any of her prior proposed orders of extension similarly contained untrue statements.

Likewise, the Court of Appeals observed that "the apparent practice in McPherson District Court, or at least on one prior occasion, [was] to accommodate 60-203(a) requests of counsel upon little or no showing, thus causing counsel to reasonably believe that her extension order was valid." 36 Kan. App. 2d at 852. Again, the record does not demonstrate that Finley's counsel's previous proposed order to this particular court contained similar untrue statements, particularly under circumstances which a judge would find constituted a borderline "reckless disregard for the facts." Simply put, "little or no showing" of good cause is not, and cannot be, the

equivalent of an *untrue* showing. Sustaining orders which are based upon statements known by counsel to be untrue does not serve the administration of justice in Kansas.

We additionally note that the Court of Appeals repeatedly found that Finley's counsel included "untrue 'boilerplate' within the proposed order." See, *e.g.*, 36 Kan. App. 2d at 852. It emphasized that Judge Anderson "stopped short" of finding Finley's counsel engaged in a misrepresentation, and that he "refused to find that counsel had misled Judge Walker." 36 Kan. App. 2d at 850. It also held that "despite what the district court characterized as 'reckless disregard' for the true facts in establishing good cause, counsel's conduct was found to be less culpable than an outright misrepresentation or fraud on the court." 36 Kan. App. 2d at 852.

The Court of Appeals has sliced the onion too thinly. Judge Anderson found "I will not go so far as to accuse plaintiff's counsel of purposely misleading Judge Walker, but I feel it borders on a reckless disregard for the true facts of this case." Accordingly, while the judge found that counsel had not *"purposely"* misled Judge Walker, this certainly leaves open the possibility that counsel had indeed misled the court, but had merely fallen someplace short of doing so purposely or intentionally, particularly given the finding of her borderline reckless disregard for the truth.

The Court of Appeals also sliced too thinly in concluding there was no "outright misrepresentation." 36 Kan. App. 2d at 852. Misrepresentation need not be intentional. For example, fraudulent misrepresentation requires proof that the defendant knew the statement was untrue or was reckless as to the truth or falsity, while negligent misrepresentation only requires proof that the defendant failed to exercise reasonable care or competence to obtain or communicate true information. See *Gerhardt v. Harris,* 261 Kan. 1007, 1018, 934 P.2d 976 (1997). Judge Anderson obviously found that counsel's conduct exceeded mere negligence. And his finding of borderline "reckless disregard for the true facts" could constitute the "reckless as to the truth or falsity" element needed for fraudulent misrepresentation.

In conclusion, Finley's counsel has admitted that untrue "boilerplate" statements were supplied to the district court in her pro-

posed order for extending time for service. Because she provided no other information other than the order, it is clear that the court then signed it in reliance upon the truthfulness of the statements contained there. We are unable to condone such a practice by providing relief through application of a doctrine which depends upon such concepts as equity, the interests of justice, good faith, estoppel, or nonparty error.

The remaining issues on appeal are moot.

The judgment of the district court is affirmed, and the judgment of the Court of Appeals is reversed.

DAVIS and JOHNSON, JJ., not participating.

LARSON, S.J., and MCANANY, J., assigned.